IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| PROYECTO ELECTROMECANICO S.A. De C.V., | § § § |
| Plaintiff, | § § |
| v. | §   EP:09-CV-209-KC § |
| CADDELL CONSTRUCTION CO., INC., et al., | § § § § |
| Defendants. | § |

## ORDER

On this day, the Court considered Defendants Caddell Construction Co., Inc. ("Caddell"), Travelers Casualty and Surety Company of America, Fidelity & Deposit Company of Maryland, Zurich American Insurance Company and Continental Casualty Company's (collectively, "Defendants"[1]) Motion for Relief from Order Under Rule of Civil Procedure 60(b)(1) ("Motion for Relief") (Doc. No. 26) and Defendants' Memorandum in Support of Their Motion for Relief from Order Under Federal Rule of Civil Procedure 60(b)(1) ("Memorandum") (Doc. No. 27). In addition, the Court reconsidered Defendants' Motion to Stay (Doc. No. 16). For the reasons set forth herein, Defendants' Motion for Relief and Motion to Stay are **GRANTED**.

**I.   BACKGROUND**

The facts underlying the instant dispute are recounted in the Court's June 10, 2010, Order

---

[1] Defendant Banes General Contractor, Inc. ("Banes") is not a party to the Motion for Relief or the Motion to Stay (Doc. No. 16).

1

(Doc. No. 25).² On April 22, 2010, Defendants motioned the Court to stay the instant case "until arbitration proceedings have been completed" pursuant to an arbitration clause contained in the contract between Caddell and its subcontractor, Termel S.A. de C.V. ("Termel") ("Caddell-Termel contract") and the "flow-down provision" contained in the contract between Plaintiff Proyecto Electromecanico S.A. de C.V. ("Plaintiff") and Termel ("Termel-Proemsa contract"), which Defendants claim incorporated the Caddell-Termel arbitration clause into the Termel-Proemsa contract. *See generally* Mot. to Stay ¶ 6. On June 10, 2010, the Court denied Defendants' Motion to Stay because the evidence provided by Defendants showed that the Caddell-Termel contract was executed almost two years after the execution of the Termel-Proemsa contract. As such, the flow-down provision lacked the "reasonably clear and ascertainable meaning" required for valid incorporation. *See J. S. & H. Constr. Co. v. Richmond County Hosp. Auth.*, 473 F.2d 212, 215 (5th Cir. 1973).

In response to the Court's denial of its Motion to Stay, Defendants have motioned the Court for relief under Federal Rule of Civil Procedure 60(b)(1), alleging that they inadvertently provided the Court with an inaccurate copy of the Caddell-Termel contract. *See* Mot. for Relief ¶ 8. Caddell has since provided the Court with what it purports to be an accurate copy of the relevant contract. *See* Mem. Ex. A ("second Caddell-Termel contract"). The second Caddell-Termel contract indicates that it was executed on August 25, 2006, prior to the execution of the Termel-Proemsa contract. *See id.* Plaintiff has not filed a response to Defendants' Motion for

---

² Pursuant to Banes's Motion to Clarify Order Under Federal Rule of Civil Procedure 60(a) (Doc. No. 28), the Court substitutes the phrase "the following facts are alleged by Plaintiff" for the phrase "the following facts are undisputed" in its June 10, 2010, Order.

Relief or otherwise challenged the validity of the second Caddell-Termel contract.

## II. DISCUSSION

### A. Standard

The Federal Rules of Civil Procedure allow district courts to relieve a party from a court order for reasons of, among other things, "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). "[T]he decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court and will be reversed only for abuse of that discretion." *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc).

### B. Analysis

The Court originally denied Defendants' Motion to Stay because the Caddell-Termel contract containing the arbitration clause at issue was entered into after the execution of the Termel-Proemsa contract, which allegedly incorporated that arbitration clause by reference. *See* Order, June 10, 2010, at 9-11. Because Defendants have subsequently provided the Court with what they assert to be an accurate copy of the contract containing the arbitration clause, and because Plaintiffs do not dispute the second Caddell-Termel contract's validity, the Court considers Defendants' Motion to Stay in light of the newly-provided evidence.

### C. Motion to Stay

As discussed in the Court's June 10, 2010, Order, the Court must determine "whether there is a valid agreement to arbitrate between the parties" and "whether the dispute in question falls within the scope of that arbitration agreement" in order to evaluate whether a stay is proper. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (citing *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994); *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d

Cir. 1990)). For both inquiries, the Court must "apply[] the federal substantive law of arbitrability, 'applicable to any arbitration agreement within the coverage of the [FAA].'" *Id.* (citing *Moses H. Cone Mem. Hosp. v. Mercury Const.*, 460 U.S. 1, 24 (1983)).

> In determining whether a dispute is arbitrable, the court must employ the rules of contract construction to determine the intent of the parties. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). However, "[the FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *See Moses H. Cone*, 460 U.S. at 25, 103 S.Ct. at 941. A finding that the scope of the arbitration clause is vague does not automatically catapult the entire dispute into arbitration. Rather, such a finding creates a presumption in favor of arbitration. *See Moses H. Cone*, 460 U.S. at 24-25, 103 S.Ct. at 941-42. This presumption can be overcome with clear evidence that the parties did not intend the claim to be arbitrable. *See id.*

*Id.*

### 1. Valid agreement to arbitrate

The Court has rejected Plaintiff's argument that arbitration clauses may not be incorporated by general reference in cases arising under the Miller Act. *See* Order, Jun. 10, 2010, at 9 (citing *J. S. & H. Constr. Co.*, 473 F.3d at 215) (noting that incorporation by reference is generally valid so long as the referenced provision "has a reasonably clear and ascertainable meaning"). Accordingly, in order to determine whether the parties entered into a valid agreement to arbitrate, the Court must evaluate whether the arbitration clause in the second Caddell-Termel contract had "a reasonably clear and ascertainable meaning." *See id.*

The Termel-Proemsa contract states that,

> [f]or all matters related to the fulfillment of this Contract, [Plaintiff] acknowledges that this subcontract shall be governed by all the general conditions, regulations[,] standards, and criteria agreed upon in the contract executed between [Termel and Caddell.] Additionally, [Plaintiff] expressly acknowledges that in

> case of any dispute arising as to its interpretation or execution, the applicable [provisions] pursuant to the contract between [Termel and Caddell] shall govern first . . . .

*Id.* at App. A.

The language of the Termel-Proemsa contract makes clear that all disputes arising from the Termel-Proemsa contract's interpretation or execution will be governed by the second Caddell-Termel contract. For its part, the Rider to the second Caddell-Termel contract states that

> [a]ll claims, disputes and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof, which are not controlled by another provision of this Subcontract, shall be finally decided by binding arbitration in accordance with the Construction Industry Arbitration Rules (AAA Rules) of the American Arbitration Association (AAA), as herein modified, unless the parties mutually agree otherwise.

Mem. Ex. A at 11 ("Caddell-Termel Rider") (Doc. No. 27-1).

In addition, the Caddell-Termel Rider states that "the site of the arbitration shall be Montgomery, Alabama." *Id.*

The "determination of whether a contract is ambiguous and the interpretation of a contract are questions of law." *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 822 (5th Cir. 2003) (citing *Stinnett v. Colorado Interstate Gas Co.*, 227 F.3d 247, 254 (5th Cir. 2000)). Based on the plain language of the respective contracts, the Court finds that the agreement to arbitrate had "a reasonably clear and ascertainable meaning" and that the parties entered into a valid agreement to arbitrate. *See id.* ("When a contract is expressed in unambiguous language, its terms will be given their plain meaning and will be enforced as written.") (citing *Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co.*, 112 F.3d 184, 186 (5th Cir. 1997)); *see also Kessmann and Assocs., Inc. v. Barton-Aschman*, 10 F. Supp. 2d 682, 691 (S.D. Tex. 1997). However, in order for Defendants to prevail on their Motion, the

5

arbitration clause must also govern the instant dispute.

### 2. Scope of arbitration clause

Plaintiff does not argue that its claims are not "related to the fulfillment of" the Termel-Proemsa contract; however, in ruling on a motion to stay, a district court must determine whether the parties agreed to arbitrate the dispute in question. *See Harvey*, 199 F.3d at 793. As noted by Defendants, the Fifth Circuit has held that "[a]rbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Commerce Park at DFW Freeport v. Mardian Const. Co.*, 729 F.2d 334, 338 (5th Cir. 1984) (quoting *Wick v. Atl. Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979)).

In its contract with Termel, Plaintiff "expressly acknowledge[d] that in case of any dispute arising as to [the Termel-Proemsa contract's] interpretation or execution, the applicable [provisions] pursuant to the contract between [Termel and Caddell] shall govern first . . . . " Order, Jun. 10. 2010, App. A. By signing the Termel-Proemsa contract, Plaintiff also "acknowledge[d] having read [the Caddell-Termel] Contract and acknowledge[d] its obligation under such." Def.'s Mem. in Support of Mot. to Stay Ex. B § 6 (Doc. No. 17-2).

The Supreme Court has held that arbitration clauses which submit to arbitration "any controversy or claim arising out of or relating to" the contract are broad in scope. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967). The Fifth Circuit has similarly held that, when an agreement contains an arbitration clause which covers disputes, controversies or claims "arising out of or in connection with or relating" to the contract, the parties "intend the clause to reach all aspects of the relationship." *Nauru Phosphate Royalties,*

*Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165 (5th Cir. 1998) (quoting *Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 n.2 (5th Cir.), *cert. denied*, 509 U.S. 923 (1993)).

According to its Amended Complaint, Plaintiff agreed to provide labor for the installation of the plumbing and fire protection systems for the Project. Pl.'s First Am. Compl. ¶ 14 ("Compl.") (Doc. No. 5). Plaintiff seeks to recover under theories of quantum meruit, prompt payment, the Miller Act, unjust enrichment, bad faith, and fraud for providing labor and materials "greatly in excess" of what was reasonably expected when it submitted its bid for the Project. *See generally id.* Specifically, Plaintiff claims that it was coerced into supplying materials for the project after "Defendant Banes and Defendant Caddell [had] represented to Plaintiff that only labor for the installation of already fabricated materials was to be provided by Plaintiff." *Id.* ¶ 14.

Although Plaintiff claims that it supplied labor and materials in excess of what it had originally agreed to provide, the materials and labor were provided for the New Consulate Compound in Ciudad Juarez, which was the subject of its contract with Termel, and thus they "arose out of" or "related to" its agreement with Termel. Furthermore, Plaintiff's contract with Termel states that Plaintiff

> agrees to provide the materials, labor including any taxes which may arise from the same, the tools, machinery, equipment and all those elements necessary to carry out the work contracted herein and agrees to the terms of the present contract under the conditions stipulated to in the present instrument; to perform the work in the aforementioned statements based on the plans, instructions, specifications and the specified and general provisions of the project.

Def.'s Mem. in Support of Mot. to Stay Ex. B § 1.

The contract also states that Proemsa "is required to carry out the work which is the subject of this contract, with personnel, equipment and tools which he shall supply or rent." *Id.* § 6. Thus,

although Plaintiff claims that it agreed to provide "only labor" for the project, its contract with Termel contradicts its claim. Because it cannot be said with "positive assurance" that the arbitration clause is not susceptible to an interpretation which covers the instant dispute, a finding that the instant dispute is within the scope of the agreement to arbitrate is proper. *See Commerce Park*, 729 F.2d at 338 (quoting *Wick*, 605 F.2d at 168).

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion for Relief (Doc. No. 26) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Stay (Doc. No. 16) is **GRANTED**. Accordingly, the above-captioned cause is stayed pending the resolution of the above-captioned dispute in arbitration.

**IT IS FURTHER ORDERED** that the case be **ADMINISTRATIVELY CLOSED** unless and until the parties, or a party, move otherwise.

**IT IS FURTHER ORDERED** that the parties are directed to notify this Court of the outcome of the arbitration proceedings within two weeks of final disposition.

**SO ORDERED.**

**SIGNED** on this 14th day of July 2010.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE